19 N.J. Super. 39 (1952)
87 A.2d 555
NATHAN GOLDSTEIN AND HARRY GOLDSTEIN, CO-PARTNERS TRADING UNDER THE FIRM NAME AND STYLE OF COMET EMBROIDERY CO., PLAINTIFFS,
v.
COMMONWEALTH TRUST COMPANY, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
THE TRUST COMPANY OF NEW JERSEY, A BANKING CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided March 19, 1952.
*42 Mr. Isidore Parnes, attorney for plaintiffs.
Messrs. Burke, Sheridan & Hourigan (Mr. Edmund B. Hourigan appearing), attorneys for defendant and third-party plaintiff.
Mr. Thomas E. Lynch, attorney for third-party defendant, (Mr. Benjamin Gross, of counsel).
COOLAHAN, J.C.C.
Motion has been made by the third-party defendant, in which the defendant and third-party plaintiff has joined, to strike the plaintiffs' complaint on the ground that it does not set forth a cause of action against either of the moving parties.
In substance the complaint alleges the following:
Morris Silver, a duly licensed attorney of New Jersey, acting on behalf of the plaintiffs, made and delivered his check in the amount of $5,000 drawn on an account which he, Silver, had with the Commonwealth Trust Company. The check was payable to Grantwood Electric, a New Jersey corporation. It is alleged that the instrument was endorsed on behalf of the aforementioned payee without authority. On or about August 1, 1951, the check was presented for payment, and Commonwealth charged the same to the account of Silver. The plaintiffs, conceiving that the instrument was improperly honored, have demanded judgment against Commonwealth for the full $5,000.
As the Trust Company of New Jersey initially accepted the instrument for deposit, and, in endorsing it for payment, guaranteed all prior endorsements, it was brought in by Commonwealth as third-party defendant.
The plaintiffs, in opposing this motion, have advanced a theory of their case which is of novel impression, at least in this jurisdiction. It appears that the attorney, Morris Silver, had some of plaintiffs' funds deposited in his attorney's account which bore the label "Special Account." In view of this, they claim that the cause of action is not one based on a negotiable instrument, but rather upon breach of contract. *43 They argue that it is properly grounded on the implied contract between the bank and its depositor, Silver, and that they, therefore, have standing to sue as the real parties in interest under Rule 3:17-1 of our civil practice by reason of their contention that they are the undisclosed principals of Silver who acted on their behalf.
Were this cause brought solely upon the instant negotiable instrument, the plaintiffs, not being parties to it, would have the great weight of authority against their recovery. Where a negotiable instrument is the basis of an action, it has been frequently held that an undisclosed principal may not bring suit. Heart of America Lumber Co. v. Belove, 111 F.2d 535 (C.C.A. 8 1940); 1 Williston on Contracts, § 286; 2 Am. Jur. Agency, § 411. This is but the converse and logical extension of the well established rules that an undisclosed principal may not be subjected to suit on a negotiable instrument signed by his agent alone, and that generally liability on a negotiable instrument is limited to the parties appearing thereon. Harris v. McPherson, 41 N.J.L.J. 55 (Circ. Ct. 1917); Harter v. Mechanics National Bank, 63 N.J.L. 578 (E. & A. 1899); Briggs v. Partridge, 64 N.Y. 357 (Ct. Apps. 1876); Kempner v. Dillard, 100 Tex. 505 (Sup. Ct. 1907); Pease v. Pease, 35 Conn. 131 (Sup. Ct. Err. 1868); 2 Am. Jur., Agency, § 397.
As the plaintiffs have urged the contract concept, we must first consider the nature of the relationship existing between Silver, the depositor, and Commonwealth, the depository bank. In so far as general deposits are concerned, the bank's relation to its depositor is that of debtor, and necessarily arising from the contract of deposit is the obligation incumbent on the bank to disburse money standing in the name of their creditor-depositor only on his order and in conformity with his direction. Slavin v. Passaic National Bank and Trust Co., 114 N.J.L. 341 (E. & A. 1934). Thus, it is evident that where a bank pays out on an instrument falsely or fraudulently endorsed through no fault or connivance of the depositor, it cannot legally charge the same *44 to his account, as it has failed to pay out in accordance with his order.
Considering, then, the case at hand, are there present peculiar circumstances sufficient to enable the plaintiffs to be cloaked with the mantle of the depositor and so maintain this suit? I think not. The fact that the account here involved is an attorney's account specifically labeled "Special Account" does not per se enlarge the duties or obligations of a bank to include others than the depositor. In my view, an account such as this has no greater status than any ordinary general deposit in so far as a bank's liabilities are concerned. It is argued in part that the labelling of the account was of such a nature as to give notice to the bank of the fact that their depositor was acting merely as an agent or fiduciary. Although notice to the bank is not indispensable to the plaintiffs' theory of recovery, I am compelled to recognize judicially that special attorneys' accounts may not only contain clients' funds but also funds belonging to the attorneys themselves. The best, then, that can be said for the plaintiffs' proposition is that a bank has knowledge that the attorney may be disbursing funds not his own. Consequently, in any given transaction, a bank's knowledge is inadequate to charge it with notice that it is in fact acting for a principal other than the depositor. Regardless, even in a situation where a bank had adequate notice that an account was held by a depositor only in a fiduciary capacity, it has been held that the bank's obligation runs to the trustee-depositor and that it owes no duty to the trust estate save to refrain from participating in misappropriating the funds. New Amsterdam Casualty Company v. National Newark and Essex Banking Co., 117 N.J. Eq. 264 (Ch. 1934), affirmed 119 N.J. Eq. 540 (E. & A. 1935). This is quite evidently the policy embodied in our Revised Statutes 3A:41-7. An action cannot lie for a breach of a duty in favor of one to whom the duty was not owed. Only a person to whom the duty is owed can recover for neglect of duty or obligation, whether such exists at common law or is imposed by statute.
*45 It is doubtless generally true, as plaintiffs urge, that, as undisclosed principal, one may maintain in his own name a suit for the breach of an ordinary contract, such as one concerned with the purchase and sale of chattels. Rich v. Bongiovanni, 4 N.J. Super. 243 (App. Div. 1949). But here we are concerned with a contract unlike the ordinary one. Viewing the fact pattern of this cause as if through a stereoscope, it is possible to perceive not one but three separate contracts: first, the primary one between the plaintiffs and the payee of the check wherein the depositor is acting as attorney for the plaintiffs; second, the contract as embodied in the negotiable instrument, and finally, the contract arising between Commonwealth and Silver as a result of Silver's deposit. The latter contract, implied in law, is, of course, the one with which we are here concerned. In this view of the case, it can readily be seen that the bank is the mere conduit or instrumentality through which the primary contract is partially achieved. Therefore, rather than being in the position of undisclosed principal, it would appear that the plaintiffs' status would be more accurately determined as that of incidental beneficiary having no right to bring suit.
Furthermore, denying these plaintiffs the right to recover can well be rested on grounds of public policy alone. Banks, as institutions of quasi-public character, are entrusted in our economy with a most important franchise. Yet, for good reason, they are liable to their depositor, under what is the practical equivalent of absolute liability, should they pay out on any check of his which had been endorsed falsely, fraudulently or without authority. To extend this liability beyond its present scope to include those who may stand hidden behind the depositor with whom the bank had openly dealt, would be imposing a serious burden and handicap on the most common of commercial transactions. It is foreseeable that the weight of responsibility then on banks would necessitate the exercise of so much caution as to have a breaking effect on the free flow of negotiable instruments.
*46 In regard to the remaining claim of the plaintiffs that they, under Rule 3:17-1 of our Rules of Civil Practice, have the right to bring this cause of action as the real parties in interest, I must disagree. Real party in interest statutes are not intended to enlarge existing substantive rights or to confer a cause of action where none existed before. They were enacted to simplify matters of pleading and procedure generally, and to adopt substantially the equity rule which permitted all actions to be instituted by the equitable or beneficial owner thereof. 39 Am. Jur., Parties, § 16. Such provisions are intended to bring before the court the party rightfully interested in the litigation, so that the judgment, when entered, will be binding and conclusive and the defendant will be saved from further harassment or vexation at the hands of other claimants to the same demand. 39 Am. Jur., Parties, § 17. Assuming the success of the plaintiffs in this action, it is entirely conceivable that Silver, the depositor, could later bring an action against the bank to have it recredit the amount of the check. Certainly, it is clear that if Silver were to appear as plaintiff in the first instance, the matter would perhaps be properly before the court.
The motion is granted and the complaint is stricken as to both defendants.