686 A.2d 1265

NEW JERSEY CITIZEN ACTION, PLAINTIFF–RESPONDENT, v. THE RIVIERA MOTEL CORPORATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 17, 1996—Decided January 16, 1997.

404

Before Judges MICHELS, MUIR, Jr. and KLEINER.

*Kelso & Kaplan,* attorneys for appellant (*Robert J. Zullo, Jr.,* of counsel and on the brief).

*Kopelson & Westreich,* attorneys for respondent (*Robert Westreich,* of counsel and on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Defendant Riviera Motel Corporation (correctly known as Riviera Motor Hotel, Inc.), appeals from a judgment of the Law Division that awarded plaintiff New Jersey Citizen Action counsel fees and costs in the total sum of $4,366.20 in this action to obtain compliance with federal and state laws governing accessibility to public accommodations by the disabled.

Plaintiff is a New Jersey not-for-profit corporation, consisting of disabled individuals, organizations dedicated to the rights of the disabled, and organizations whose members include the disabled, including those disabled individuals who live, work, and recreate in and around Bergen County. The organization is essentially an advocacy organization for the disabled whose members have an interest in the accessibility of places of public accommodation.

Plaintiff notified defendant that its motel in Fort Lee, New Jersey, violated laws governing accessibility for the disabled. When remedial action was not forthcoming, plaintiff instituted this action seeking remediation, counsel fees, and costs. Plaintiff alleged that defendant's motel had not been constructed, altered, or modified to be accessible to persons with disabilities in that the entrance barred access by wheelchair users, there was an absence of parking for the disabled, an absence of an accessible room and other architectural barriers. In the First Count of the complaint,

plaintiff charged that defendant's failure to render its motel premises accessible to persons with disabilities violated the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 *et seq.*, New Jersey Handicapped Access Law (HAL), *N.J.S.A.* 52:32–4, and regulations of the New Jersey Uniform Construction Code, specifically the Barrier Free Design Code (BFDC), *N.J.A.C.* 5:23–7. In the Second Count, plaintiff charged that defendant's failure to render the motel premises accessible to persons with disabilities violated the Americans with Disabilities Act of 1990(ADA), 42 *U.S.C.A.* § 12181 *et seq.*

After issue was joined, plaintiff and defendant entered into a stipulation of partial dismissal in which defendant agreed to undertake certain remedial measures sought by plaintiff which were readily achievable within the meaning of 42 *U.S.C.A.* § 12181. Plaintiff agreed to dismiss with prejudice and without costs and counsel fees all of the state claims under the First Count. Defendant did not agree that plaintiff was entitled to counsel fees and costs with respect to the ADA claims under the Second Count and the parties, therefore, agreed to submit that issue to the court. The precise terms of the stipulation are as follows:

1. The Defendant shall, on or before October 1, 1996, cause one of its motel rooms to be rendered wheelchair accessible by altering it to comply with the ADA Accessibility Guidelines adopted pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

2. The Defendant shall, on or before August 1, 1996, provide two designated handicapped parking spaces, including one with a sixteen foot width, sized and signed in conformance with the ADA and applicable state law.

3. The Defendant shall, on or before August 1, 1996, provide an accessible route of travel from the designated parking spaces to the Defendant's motel office and ground floor, guest rooms. The route of travel shall conform with Title III of the ADA.

4. The Defendant will, on or before August 1, 1996, equip one motel room with a text telephone and visual alarms for the hearing impaired in conformance with Title III of the ADA provided the cost does not exceed $250.00.

5. As to Plaintiff's entitlement to an award of counsel fees and costs, the Parties have reached no agreement. They will seek to negotiate their differences and, failing agreement, shall submit those issues to the Court.

6. Plaintiff dismisses all state law claims, with prejudice and without costs, and without fees, as set forth in Count I.

7. Defendant stipulates that the alterations agreed to herein are "readily achievable" within the meaning of Title III of the ADA.

At the conclusion of the counsel fee hearing, Judge Lawrence B. Smith in the Law Division held that plaintiff had standing to maintain the ADA action and awarded plaintiff counsel fees of $4,000 and costs of $366.20 for a total of $4,366.20. Defendant appealed.

Defendant seeks a reversal of the judgment awarding plaintiff counsel fees and costs, contending that plaintiff lacks standing to commence a private action under Title III of the ADA. Defendant argues that plaintiff was not "a person aggrieved" within the meaning of the ADA and the Civil Rights Act of 1964 because it suffered no injury in fact and failed to comply with the administrative prerequisites to a suit under the ADA and the Civil Rights Act. We disagree and affirm. We have carefully considered the record and arguments presented and are satisfied the trial court properly held that plaintiff had standing to maintain this action against defendant under the ADA and that plaintiff was entitled to counsel fees and costs under the ADA.

*I.*

We turn first to the critical issue of whether plaintiff has standing to maintain an action under the ADA. Standing refers to the plaintiff's ability or entitlement to maintain an action before the court. *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n,* 82 *N.J.* 57, 67, 411 *A.*2d 168 (1980); *Al Walker, Inc. v. Borough of Stanhope,* 23 *N.J.* 657, 660, 130 *A.*2d 372 (1957). Courts will not entertain matters in which plaintiffs do not have sufficient legal standing. *In re Quinlan,* 70 *N.J.* 10, 34, 355 *A.*2d 647, *cert. denied,* 429 *U.S.* 922, 97 *S.Ct.* 319, 50 *L. Ed.*2d 289 (1976); *Al Walker, Inc. v. Borough of Stanhope, supra,* 23 *N.J.* at 660, 130 *A.*2d 372. In order to possess standing, the plaintiff must have a sufficient stake in the outcome of the litigation, a real adverseness with respect to the

subject matter, and there must be a substantial likelihood that the plaintiff will suffer harm in the event of an unfavorable decision. *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, supra,* 82 *N.J.* at 67, 411 *A.*2d 168; *Crescent Pk. Tenants Ass'n v. Realty Equities Corp.,* 58 *N.J.* 98, 107, 275 *A.*2d 433 (1971); *In re Tp. of Howell,* 254 *N.J.Super.* 411, 416, 603 *A.*2d 959 (App.Div.), *certif. denied,* 127 *N.J.* 548, 606 *A.*2d 362 (1991).

> [T]he essential purposes of the standing doctrine in New Jersey.... are to assure that the invocation and exercise of judicial power in a given case are appropriate. Further, the relationship of plaintiffs to the subject matter of the litigation and to other parties must be such to generate confidence in the ability of the judicial process to get to the truth of the matter and in the integrity and soundness of the final adjudication. Also, the standing doctrine serves to fulfill the paramount judicial responsibility of a court to seek just and expeditious determinations on the ultimate merits of deserving controversies.
>
> [*New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, supra,* 82 *N.J.* at 69, 411 *A.*2d 168.]

Though the concept of standing is clear when viewed in isolation, it is unclear exactly how the concept relates to jurisdiction, justiciability, and real party in interest. Our Supreme Court, in *Watkins v. Resorts Int'l Hotel & Casino, Inc.,* 124 *N.J.* 398, 424, 591 *A.*2d 592 (1991), stated that standing is "a threshold justiciability requirement [which] must be determined before a court may proceed to consider the substantive merits of the case." The Court explained:

> Standing is ... a threshold issue. It neither depends on nor determines the merits of a plaintiff's claim. Standing, like jurisdiction, involves a threshold determination of the court's power to hear the case.
>
> Although a dismissal for lack of standing may involve considerations similar to those involved in a dismissal for failure to state a claim on which relief can be granted, the two types of dismissals are distinct. Standing involves "limits on the exercise of ... jurisdiction." A dismissal for lack of standing, like one for lack of jurisdiction, amounts to a refusal by the court to resolve the matter. A dismissal for failure to state a claim, on the other hand, occurs only after the court has agreed to resolve the controversy.
>
> [*Id.* at 417–18, 591 *A.*2d 592 (citations omitted) (second omission in original).]

In *Gilbert v. Gladden,* 87 *N.J.* 275, 280–81, 432 *A.*2d 1351 (1981), the Court stated that subject-matter jurisdiction and justiciability must be distinguished from each other and analyzed separately.

[T]he justiciability inquiry must be distinguished from the issue of whether subject-matter jurisdiction exists. The latter question involves merely a threshold determination as to whether the Court is legally authorized to decide the question presented. If the answer to this question is in the negative, consideration of the cause is "wholly and immediately foreclosed." See *Baker v. Carr*, 369 *U.S.* 186, 198, 82 *S.Ct.* 691, [700], 7 *L. Ed.*2d 663, 674 (1962). In respect of justiciability, however, the inquiry proceeds beyond the threshold determination "to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded. *Id.*"

[*Id.*]

Clearly, subject-matter jurisdiction and justiciability are both threshold issues, that is, issues which must be addressed before considering the substantive merits of the matter. Subject-matter jurisdiction refers to "the power of a court to hear and determine cases of the class to which the proceeding in question belongs. It solely rests upon the court's having been granted such power by the *Constitution* or by valid legislation, and cannot be vested by agreement of the parties." *State v. Osborn*, 32 *N.J.* 117, 122, 160 *A.*2d 42 (1960). Justiciability refers to whether a matter is appropriate for judicial review. Because standing affects whether a matter is appropriate for judicial review rather than whether the court has the power to review the matter, and standing is a *judicially constructed* and *self-imposed* limitation, it is an element of justiciability rather than an element of jurisdiction. *See In re Boardwalk Regency Corp.*, 90 *N.J.* 361, 368, 447 *A.*2d 1335, *appeal dismissed sub nom.*, 459 *U.S.* 1081, 103 *S.Ct.* 562, 74 *L. Ed.*2d 927 (1982); *Salorio v. Glaser*, 82 *N.J.* 482, 490–91, 414 *A.*2d 943, *cert. denied*, 449 *U.S.* 874, 101 *S.Ct.* 215, 66 *L. Ed.*2d 94 (1980); *Al Walker, Inc. v. Borough of Stanhope, supra*, 23 *N.J.* at 660, 130 *A.*2d 372.

The justiciable doctrine of standing fulfills an important purpose, but it is no more than its requirements. It is the requirements of standing (sufficient stake in the outcome, real adverseness, etc.) which fulfill the doctrine's purpose. A plaintiff does not meet standing's requirements simply because the defendant, as here, may not have raised the issue or objected to the plaintiff's lack of standing in the trial court. Hence, in order for

standing to have real meaning, standing cannot be waived. If standing were waivable, the public could no longer be "assure[d] that the invocation and exercise of judicial power in a given case are appropriate." *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, supra,* 82 *N.J.* at 69, 411 *A.*2d 168.

Case law of other states reveals that the standing waiver issue is split among them though it is difficult to say exactly how because there is confusion as to the exact meaning of standing and as to how standing relates to jurisdiction and how it is distinguished, if at all, from "real party in interest." Some states distinguish between the concepts of standing and real party in interest and hold that the real party in interest defense is waivable whereas the lack of standing defense is not waivable. *See generally Texas Ass'n of Business v. Texas Air Control Bd.,* 852 *S.W.*2d 440, 443–45 (Tex.1993); *Kumar Corp. v. Nopal Lines, Ltd.,* 462 *So.*2d 1178, 1182–83 (Fla.Dist.Ct.App.), *review denied,* 476 *So.*2d 675 (1985). Federal courts also recognize a distinction under federal law between standing and real party in interest and hold that the real party in interest defense is waivable whereas the lack of standing defense is not waivable.[1] *See Federal Deposit Ins. Corp. v. Bachman,* 894 *F.*2d 1233, 1235–36 (10th Cir.1990); *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 *F.*3d 1416, 1431 (3d Cir.1994); *Lucas v. Lucas,* 946 *F.*2d 1318, 1322 n. 6 (8th Cir.1991).

---

1 *Fed.R.Civ.P.* 17(a) Real Party in Interest provides:

Every action *shall* be prosecuted in the name of the real party in interest. An executor, administrator, guardian ... may sue in that person's own name without joining the party for whose benefit the action is brought.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest. [Emphasis added.]

██ New Jersey law does not recognize any distinction between the concepts of standing and real party in interest. In fact, the discussion of standing as it relates to associations as sole party plaintiffs occurs in the comments to *R.* 4:26-1. *See* Pressler, *Current N.J. Court Rules,* comment on *R.* 4:26-1 (1996). *R.* 4:26-1, in pertinent part, provides:

> Every action may be prosecuted in the name of the real party in interest; but an executor, administrator, guardian of a person or property, trustee . . . may sue in the fiduciary's own name without joining the person for whose benefit the suit is brought.

The rule indicates that associations need to have standing in order to qualify as "real parties in interest," but it does not indicate any substantive distinction between the concepts. In fact, "real party in interest" has been described generally by language which is strikingly similar to the language usually employed to describe standing. For instance, the essential meaning of the real party in interest rule is that each party bringing an action must be beneficially entrusted or rightfully or substantially interested in the outcome of the litigation "so that the judgment, when entered, will be binding and conclusive and the defendant will be saved from further harassment or vexation at the hands of other claimants to the same demand." *Goldstein v. Commonwealth Trust Co.,* 19 *N.J.Super.* 39, 46, 87 *A.*2d 555 (Law Div.1952). *See also Board of Ed., Tp. of Woodbridge v. Kane Acoustical Co.,* 51 *N.J.Super.* 319, 329, 143 *A.*2d 853 (App.Div.1958). Consequently, plaintiff must have standing to qualify as a real party in interest in order to maintain this action because defendant cannot waive that justiciability requirement.

 The legislative history of the ADA clearly indicates that associations may bring ADA claims on behalf of disabled individuals. "The term 'person' is used in the enforcement section to make it clear that organizations representing individuals with disabilities shall have standing to sue under the ADA." Staff of House Comm. on Education and Labor, 101st Cong., 2d Sess., Report on The Americans With Disabilities Act 489 (Comm. Print 1990); H.R.Rep. No. 485, 101st Cong., 2nd Sess., 49 (1990),

*reprinted in* 1990 U.S.C.C.A.N. 445. *See also Concerned Parents To Save Dreher Park Ctr. v. City of West Palm Beach,* 846 *F.Supp.* 986, 990 (S.D.Fla.1994) (emphasis added) ("to show a violation of Title II [of the ADA], a plaintiff must show: (1) that he is, or he *represents,* the interests of a 'qualified individual with a disability' "). Of course, the association representing the individual(s) must satisfy the standing requirements of the court and other procedural hurdles such as, real party in interest requirements.

42 *U.S.C.A.* § 12188(a)(1) of the ADA, which governs enforcement of Subchapter III—Public Accommodations and Services Operated by Private Entities, provides:

The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title. Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

42 *U.S.C.A.* § 2000a–3(a) of the Civil Rights Act of 1964 provides:

Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventive relief . . . may be instituted by the person aggrieved and, upon timely application, the court may, in its discretion permit the Attorney General to intervene in such civil. . . .

State courts have concurrent jurisdiction over ADA claims. *Krouse v. American Sterilizer Co.,* 872 *F.Supp.* 203, 205–06 (W.D.Pa.1994); *Jones v. Illinois Central R.R.,* 859 *F.Supp.* 1144, 1145 (N.D.Ill.1994). However, even though "the existence of such concurrent jurisdiction does not alter the fact that ADA claims are federal-question claims", *Jones v. Illinois Central R.R., supra,* 859 *F.Supp.* at 1145, whether or not a party has standing to bring an ADA claim in state court is a question of state law rather than federal law.

We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case

or controversy or other federal rules of justiciability even when they address issues of federal law, as when that are called upon to interpret the Constitution or, in this case, a federal statute.

Although the state courts are not bound to adhere to federal standing requirements, they possess the authority, absent a provision for exclusive federal jurisdiction, to render binding judicial decisions that rest on their own interpretations of federal law.

[*Asarco [ASARCO] Inc. v. Kadish,* 490 U.S. 605, 617, 109 S.Ct. 2037, 2045, 104 L. Ed.2d 696, 715 (1989) (citations omitted).]

*See also Salorio v. Glaser, supra,* 82 N.J. at 490–91, 414 A.2d 943; *Urban League of Essex County v. Township of Mahwah,* 147 N.J.Super. 28, 33, 370 A.2d 521 (App.Div.), *certif. denied,* 74 N.J. 278, 377 A.2d 682 (1977).

New Jersey courts take a broad and liberal approach to standing. *See Crescent Pk. Tenants Ass'n v. Realty Equities Corp., supra,* 58 N.J. at 101, 108, 275 A.2d 433; *Dome Realty, Inc. v. City of Paterson,* 150 N.J.Super. 448, 452, 375 A.2d 1240 (App.Div.1977). "In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of 'just and expeditious determinations on the ultimate merits.'" *Crescent Pk. Tenants Ass'n v. Realty Equities Corp., supra,* 58 N.J. at 107–08, 275 A.2d 433. Thus, "courts hold that where the plaintiff is not simply an interloper and the proceeding serves the public interest, standing will be found." *In re Quinlan, supra,* 70 N.J. at 34–35, 355 A.2d 647 (holding that father has standing to assert the constitutional rights of his incompetent daughter). *See also Salorio v. Glaser, supra,* 82 N.J. at 491, 414 A.2d 943 (reiterating that "in cases of great public interest, any 'slight additional private interest' will be sufficient to afford standing"). These principles comport with the proposition that standing rules and other justiciability norms "are not to be applied in a wooden fashion to preclude 'expeditious relief from uncertainty with respect to rights when claims are in genuine conflict.'" *Ridgewood Educ. Ass'n v. Ridgewood Bd. of Educ.,* 284 N.J.Super. 427, 431–32, 665 A.2d 776 (App.Div.1995) (quoting *Bell v. Township of Stafford,* 110 N.J. 384, 391, 541 A.2d 692 (1988)).

Having applied these rules of standing to associations, courts have concluded that an association has standing to sue as the sole party plaintiff when it has a real stake in the outcome of the litigation, there is a real adverseness in the proceeding, and the complaint "is confined strictly to matters of common interest and does not include any individual grievance which might perhaps be dealt with more appropriately in a proceeding between the individual [member] and the [defendant]." *Crescent Pk. Tenants Ass'n v. Realty Equities Corp., supra,* 58 *N.J.* at 109, 275 *A.*2d 433. *See generally* Pressler, *Current N.J. Court Rules,* comment on *R.* 4:26–1 (1996).

[E]ven in the absence of injury to itself, "an association may have standing solely as the representative of its members." In such a situation, the association must allege that its members, or any of them, "are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."

[*In re Ass'n of Trial Lawyers of America,* 228 *N.J.Super.* 180, 186, 549 *A.*2d 446 (App.Div.) (quoting *Warth v. Seldin,* 422 *U.S.* 490, 511, 95 *S.Ct.* 2197, 2211, 45 *L.Ed.*2d 343, 362 (1975)), *certif. denied,* 113 *N.J.* 660, 552 *A.*2d 180 (1988).]

However, an association does not have standing where its "representational interest is too ethereal to justify judicial recognition and acknowledgement." *Id.* at 187.

Plaintiff is a not-for-profit consumer advocacy organization. Plaintiff's members include disabled individuals, organizations dedicated to the rights of the disabled, and organizations whose members include the disabled, including individuals who live, work, and recreate in and around Bergen County. In sum, based on the record before us, plaintiff is an organization whose members "have a genuine interest in the accessibility of places of public accommodation," and, therefore, the trial court properly found that it had standing to maintain this ADA action.

## *II.*

The issue then remains as to whether plaintiff is entitled to counsel fees and costs under the ADA. 42 *U.S.C.A.* § 12205 of the ADA, which governs attorneys' fees, provides:

In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

■ "To prevail [under the ADA], a party must succeed on any significant issue in litigation and obtain a result that affects the defendant's behavior towards the plaintiff. . . . Success does not always require a formal monetary judgment; a plaintiff may prevail by obtaining a settlement or injunctive relief." *Frey v. Alldata Corp.*, 895 *F.Supp.* 221, 225 (E.D.Wis.1995) (citation omitted). *See also Fowler v. New York State Bd. of Law Examiners*, 885 *F.Supp.* 66, 68–69 (W.D.N.Y.1994). Federal courts have also looked to other federal statutes for guidance in defining "prevailing party" under the ADA because "[t]he analytical considerations for awarding attorneys' fees under . . . the ADA [is] essentially the same as the analysis under [42 *U.S.C.A.*] Section 1988." *Alexander S. ex rel. Bowers v. Boyd*, 929 *F.Supp.* 925, 930 (D.S.C.1995). Thus, in determining whether a plaintiff was a prevailing party for purposes of the ADA, one court relied on 42 *U.S.C.A.* § 1988 under which

a plaintiff must obtain relief on the merits that directly benefits him or her through an enforceable judgment, or a plaintiff must obtain comparable relief through a consent decree or settlement. *Farrar v. Hobby*, 506 *U.S.* 103, 111, 113 *S.Ct.* 566, 572–73, 121 *L.Ed.*2d 494 (1992). A plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." 506 *U.S.* at 111–112, 113 *S.Ct.* at 573.

[*Pedigo v. P.A.M. Transport, Inc.*, 98 *F.*3d 396, 397–98 (8th Cir.1996).]

Another court also relied on 42 *U.S.C.A.* § 1988 in determining whether plaintiffs were prevailing parties under a number of federal statutes including the ADA. *Alexander S. ex rel. Bowers v. Boyd, supra,* 929 *F.Supp.* at 930. The court discussed the requirements of a prevailing party under that section, stating:

"To qualify as a 'prevailing party,' a plaintiff need not prevail in every claim or issue raised, but only 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Spencer v. General Elec. Co.*, 706 *F.Supp.* 1234, 1236 (E.D.Va.1989) (quoting *Hensley v. Eckerhart*, 461 *U.S.* 424, 433, 103 *S.Ct.* 1933, 1939, 76 *L.Ed.*2d 40 (1983)) (other citations omitted) *aff'd,* 894 *F.*2d 651 (4th Cir.1990). Moreover, "[a] party may prevail by virtue of a voluntary

action by the opposing party through settlement or a consent decree." *Child v. Spillane*, 866 *F*.2d 691, 692 (4th Cir.1989).

The "prevailing party" inquiry essentially asks whether a causal connection exists between plaintiff's litigation and the relief plaintiff has obtained. *Spencer*, 706 *F.Supp.* at 1236–37 (citing *Spillane*, 866 *F*.2d at 693). The party seeking the fees must show that the lawsuit "contributed in a significant way to the winning of benefits or relief from the factual/legal condition that the fee claimant has sought to change." *Spillane*, 866 *F*.2d at 693 (citations omitted). The court may award fees where a party's efforts have merely served as a catalyst to the beneficial result which has occurred. *Id.*

At the very least, a plaintiff must show that "actual relief on the merits of his claim materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff." *Farrar*, 506 *U.S.* at 111, 113 *S.Ct.* at 573.

[*Id.* at 930–931 (footnote omitted).]

It cannot be seriously challenged that plaintiff is a "prevailing party" in this case. Plaintiff succeeded on significant issues in litigation by obtaining beneficial relief through a modification of defendant's behavior. There is no doubt that plaintiff's lawsuit was not only significant in achieving that beneficial relief, but was in fact the direct causal force behind plaintiff's success.

### III.

Defendant also argues that even if plaintiff has standing to recover attorney's fees, plaintiff is barred from recovering any fees because it has failed to comply with the administrative prerequisites of the ADA and the Civil Rights Act, 42 *U.S.C.A.* § 2000a–3. Defendant contends that "[s]atisfaction of the administrative procedures provided in Section 2000a–3(c) is a condition precedent to bringing an action under Title III of the ADA." Therefore, according to defendant, because plaintiff failed to follow these procedures, it is barred from any private right of action under the ADA, including any action for an award of attorney's fees. We disagree.

42 *U.S.C.A.* § 2000a–3(c) provides:

In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local

authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

Defendant cites *N.J.S.A.* 10:5–1 *et seq.*, the Law Against Discrimination, and specifically *N.J.S.A.* 10:5–5.1, 10:5–6, and 10:5–10, as the State laws which prohibit the "act or practice" challenged in the underlying suit and which creates an authority which NJCA should have contacted before filing its ADA action. Plaintiff counters that "New Jersey has no law that required this Defendant to make itself handicap accessible and so, there was no prerequisite to suit under the ADA."

Defendant's argument assumes that 42 *U.S.C.A.* § 2000a–3(c) is applicable to actions brought under the ADA. In fact, there is no indication within the ADA that this section is applicable to actions brought under 42 *U.S.C.A.* § 12188. Section 12188 confines itself to the remedies and procedures set forth in 42 *U.S.C.A.* § 2000a–3(a). There is no mention of Section 2000a–3(c) in Section 12188, and, thus, plaintiff did not have to comply with the procedural requirements of Section 2000a–3(c).

## *IV.*

Accordingly, the judgment awarding plaintiff counsel fees and costs is affirmed.