**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3060-23

GLENN LUCIANO and
MELANIE SIMON,

      Plaintiffs-Respondents,

v.

RIVKA BIECAGZ, ZHI LIANG,
and MARK PARK,

      Defendants-Appellants,

and

BOROUGH OF ENGLEWOOD
CLIFFS,

      Defendant-Respondent.

_____

Argued December 11, 2024 – Decided February 14, 2025

Before Judges Currier, Paganelli, and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0786-24.

Leonard E. Seaman argued the cause for appellants (The Law Offices of Richard Malagiere, PC, attorneys; Richard Malagiere, of counsel; Leonard E. Seaman and Giancarlo Ghione, on the briefs).

Louis G. DeAngelis argued the cause for respondents Glenn Luciano and Melanie Simon (Law Office of Louis G. DeAngelis, LLC, attorneys; Louis G. DeAngelis, of counsel and on the brief; Jeffrey Zajac, on the brief).

Tracy L. Lucas argued the cause for respondent Borough of Englewood Cliffs (Jardim Meisner Salmon Sprague & Susser, PC, attorneys, join in the briefs of appellants).

PER CURIAM

Defendants Rivka Biecagz, Zhi Liang, and Mark Park appeal from trial court orders of April 1, 2024 and May 10, 2024. In the orders, the court found defendants voted as council members of the Borough of Englewood Cliffs (Borough) despite having conflicts of interest.

The record reveals that in the fall of 2023, Park sought election as Mayor of the Borough, and Biecagz and Liang sought election to the Borough council. Defendants were successful in their campaigns.

In February 2024, plaintiffs, Glenn Luciano and Melanie Simon, members of the Borough council, filed a one-count complaint against defendants. The complaint alleged that "[d]uring the course of their campaign," defendants

2                                                                          A-3060-23

"defamed . . . and damaged" the reputation of the Borough's affordable housing attorney. The complaint noted that in October 2023, the attorney "filed a lawsuit . . . alleging defamation against . . . [d]efendants."

The complaint further stated that at the Borough's January 3, 2024 "reorganization meeting," Biecagz moved to terminate the attorney and Liang seconded the motion. The resolution passed—with the affirmative votes of Biecagz and Liang—and Park casting a tiebreaking vote.

Plaintiffs alleged "[d]espite a clear conflict of interest, . . . [d]efendants voted on a matter in which they clearly ha[d] a personal interest in breach of their fiduciary duty to the residents of [the Borough] and in violation of law." Plaintiffs stated "[d]efendants violated the Local Government Ethics Law [(LGEL)] by voting on the [m]otion to terminate" the attorney.

Plaintiffs requested an order from the Superior Court determining that defendants "have a conflict of interest." Plaintiffs sought to "invalidate[]" defendants' votes and to "pr[o]hibit[] them from voting" on certain matters regarding the attorney.

On February 8, 2024, the trial court entered an order to show cause. The judge ordered "[d]efendants [b]e restrained from voting on [m]otions/[r]esolutions regarding the hiring/firing of" the attorney.

On April 1, 2024, the parties appeared on the return date of the order to show cause. Plaintiffs argued the court was not prevented from exercising jurisdiction and "undoing the actions or unwinding these actions that were invalid because of the conflicts under the [LGEL]." Plaintiffs contended the Local Finance Board (LFB) was limited to "disciplining elected officials who have committed violations" and the LFB did "not have the power to undo the municipal actions or the resolutions that were passed." Plaintiffs argued the January resolution was defective because of defendants' conflicts of interest. Plaintiffs asserted defendants should have recused themselves from the vote.[1]

Defendants argued that plaintiffs only alleged a violation of the LGEL and, as such, the LFB, not the court, had jurisdiction to hear the matter.

The trial court reserved its decision. In its April 1, 2024 order, the court stated it had "previously found in its order of February 2, 2024, that the defendants should have recused themselves from . . . vot[ing because] of the conflict."[2] Moreover, the judge found "defendants' votes . . . were contrary to

---

[1] During oral argument, plaintiffs referred to related litigation where defendants were found by the trial court to have conflicts of interest regarding the attorney. The related litigation is not part of the appellate record.

[2] The February order is not part of the appellate record.

the" LGEL. Therefore, the judge found defendants' votes were "ineffectual and void."

Nonetheless, finding the attorney's contract with the Borough had "expired by its own terms on December 31, 2023, [and the attorney wa]s no longer employed by the Borough," the judge concluded that "issues relating to the [January] resolution and conflicts of the defendants pertinent to the injunction [we]re moot." The judge ordered the attorney "be fully compensated for all services rendered to the Borough through the date of th[e o]rder."

The matter returned to court on May 10, 2024. Defendants moved for reconsideration concerning the trial court's finding of a conflict of interest. Defendants argued the LGEL was "clear" that only the LFB had jurisdiction. Defendants acknowledged the trial court could have had general jurisdiction to award the requested relief—an injunction—had plaintiffs alleged and established a violation of a common law conflict of interest. However, since plaintiffs only alleged a violation of the LGEL, the court did not have subject matter jurisdiction and, therefore, no authority to award the relief.

Defendants noted that plaintiffs were not without a remedy. Defendants asserted that plaintiffs could file with the LFB and seek for it to impose "penalties" for any violation of the LGEL. Thereafter, defendants suggested,

5

plaintiffs "would have been able to seek the relief that they[ a]re seeking at the [a]ppellate level or argue that they should be entitled to it at that point."

Plaintiffs argued the courts have the authority "to enforce or give injunctive relief for a [violation of a] standing New Jersey law." Plaintiffs understood the LFB could "only punish, . . . [and] c[ould] not necessarily stop the action . . . or the votes that" took place. Plaintiffs contended it was "unrealistic" for this matter to go to the LFB when the LFB "has no ability to prevent the vote, to overturn a vote, or . . . to enforce standing New Jersey [l]aw."

The trial court reserved its decision. In its May 10, 2024 order, the judge amended the April 1 order by "remov[ing] the language finding the defendants' votes . . . were contrary to the" LGEL. In addition, the May order "refer[red] the issue of the vote . . . to the [LFB] for its consideration regarding the propriety" of the vote. Nonetheless, the trial court found "defendants' votes on the resolution were improper on account of their conflict . . . regardless of the determination of the" LFB.

On appeal, defendants argue the Legislature vested the LFB with exclusive jurisdiction over the LGEL and, therefore, the trial court lacked subject matter jurisdiction over plaintiffs' LGEL allegation. In addition,

defendants contend that, since plaintiffs did not plead a common law conflict of interest, the judge was precluded from granting plaintiffs any relief.

In response, plaintiffs contend that since the LFB is not empowered to impose injunctive and related relief they were not required to file with the LFB. In addition, plaintiffs argue that because the relief they sought was based on common law and statutory authorities—over which the Superior Court had jurisdiction—there is no reason for reversal, despite their complaint not asserting a common law conflict of interest cause of action.

In conducting our review, a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Therefore, we review questions of law de novo. The existence of "subject matter jurisdiction . . . presents a purely legal issue." Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156 (App. Div. 2012).

Subject-matter jurisdiction involves "a threshold determination as to whether the [c]ourt is legally authorized to decide the question presented." Matter of J.R., 478 N.J. Super. 1, 7 (App. Div. 2023) (alteration in original) (quoting N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 411 (App. Div. 1997)). "Subject-matter jurisdiction . . . solely rests upon the court's

having been granted such power by the Constitution or by valid legislation . . . ." Ibid. (quoting Riviera Motel, 296 N.J. Super. at 411) (internal quotation marks omitted).

Under the Constitution, "[t]he Superior Court shall have original general jurisdiction throughout the State in all causes," N.J. Const. art. VI, § 3, ¶ 2, and "[p]rerogative writs are superseded and, in lieu thereof, review, hearing and relief shall be afforded in the Superior Court . . . ." N.J. Const. art. VI, § 5, ¶ 4. Thus, common law jurisdiction is guaranteed under the Constitution and "[w]e have frequently exercised that jurisdiction in the supervision of governmental tribunals . . . ." Wyzykowski v. Rizas, 132 N.J. 509, 522 (1993).

"Among the guarantees of the common law is the entitlement to a fair and impartial tribunal." Ibid. "At common law '[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body.'" Id. at 523 (alteration in original) (quoting Scotch Plains-Fanwood Bd. of Educ. v. Syvertsen, 251 N.J. Super. 566, 568 (App. Div. 1991)). In various circumstances, our courts applied the common law test to invalidate and void council members' votes due to a conflict of interest. See id. at 524-25.

A-3060-23

"The Legislature 'may vest an administrative agency with exclusive primary jurisdiction over common-law claims,' but only if it does so expressly, and by 'explicitly' granting that agency the power to 'award damages in private matters.'" Smerling v. Harrah's Ent., Inc., 389 N.J. Super. 181, 187 (App. Div. 2006) (quoting Campione v. Adamar of N.J., 155 N.J. 245, 260-63 (1998)). Thus, as "a general rule, jurisdiction of an administrative agency may be said to be exclusive when the remedy which the agency is empowered to grant is the only available remedy for the given situation." Ibid. (quoting In re Hoboken Tchrs' Ass'n, 147 N.J. Super. 240, 248 (App. Div. 1997)).

In 1991, the Legislature passed the LGEL. The Legislature found and declared that:

> a. Public office and employment are a public trust;
>
> b. The vitality and stability of representative democracy depend upon the public's confidence in the integrity of its elected and appointed representatives;
>
> c. Whenever the public perceives a conflict between the private interests and the public duties of a government officer or employee, that confidence is imperiled.
>
> [N.J.S.A. 40A:9-22.2(a) to (c).]

Therefore, among other standards, the Legislature determined that:

[n]o local government officer or employee shall act in his [or her] official capacity in any matter where he [or she] . . . has a direct or indirect financial or personal involvement that might reasonably be expected to impair his [or her] objectivity or independence of judgment.

[N.J.S.A. 40A:9-22.5(d).]

The LGEL provides the LFB "shall have jurisdiction to govern and guide the conduct of local government officers or employees regarding violations of the provisions of this act." N.J.S.A. 40A:9-22.4.

The Legislature empowered the LFB:

a. To initiate, receive, hear and review complaints and hold hearings with regard to possible violations of this act;

b. To issue subpoenas for the production of documents and the attendance of witnesses with respect to its investigation of any complaint or to the holding of a hearing;

c. To hear and determine any appeal of a decision made by a county or municipal ethics board;

d. To forward to the county prosecutor or the Attorney General or other governmental body any information concerning violations of this act which may become the subject of criminal prosecution or which may warrant the institution of other legal proceedings by the Attorney General;

10

e. To render advisory opinions as to whether a given set of facts and circumstances would constitute a violation of this act;

f. To enforce the provisions of this act and to impose penalties for the violation thereof as are authorized by this act; and

g. To adopt rules and regulations pursuant to the "Administrative Procedure Act," . . . and to do other things as are necessary to implement the purposes of this act.

[N.J.S.A. 40A:9-22.7.]

Moreover, in terms of remedy, the LGEL provides:

b. An elected local government officer or employee found guilty by the [LFB] . . . of the violation of any provision of [40A:9-22.1 to -22.25], shall be fined not less than $100[] nor more than $500[] . . . .

c. The remedies provided herein are in addition to all other criminal and civil remedies provided under the law.

[N.J.S.A. 40A:9-22.10(b) to (c).]

It is against this backdrop that we consider the following question: did the Legislature, in enacting the LGEL, grant the LFB exclusive jurisdiction over allegations of conflicts of interest pursuant to the standards articulated under the LGEL. We conclude the answer to the question is no.

11

First, the New Jersey Supreme Court instructed courts that "decisions should be consistent with the principles of" the LGEL. Wyzykowski, 132 N.J. at 530. If the LFB had exclusive jurisdiction over those principles, the Court's instruction to the courts would be superfluous.

Second, our courts have considered the LGEL in conflicts of interest analysis. In Piscitelli v. City of Garfield Zoning Board of Adjustment, the Court noted the "common law conflict-of-interest rules [are] now codified in the" LGEL. 237 N.J. 333, 350 (2019). The Court stated that the "rules continue to help guide our review of . . . challenges to 'municipal action on conflict of interest grounds.'" Ibid. (quoting Paruszewski v. Twp. of Elsinboro, 154 N.J. 45, 58 (1998)). Moreover, the Court stated its "primary purpose is to construe the [LGEL] . . . guided by the common law, in determining whether [a] . . . member was impaired by a conflict of interest." Ibid.

In Grabowsky v. Township of Montclair, the Court applied "the statutory standards set forth in" the LGEL. 221 N.J. 536, 541 (2015). In Grabowsky, the Court observed the "challenge . . . on conflict-of-interest grounds implicate[d]" the provisions of the LGEL. Id. at 552. The Court stated that "[t]he ethics rules must be applied [by the courts] with caution." Id. at 554.

In Thompson v. City of Atlantic City, the Court noted "[t]he common law conflict-of-interest doctrines governing the conduct of municipal officials are now supplemented by the" LGEL. 190 N.J. 359, 375 (2007). The Court considered the LGEL in holding the challenged actions "were afflicted by disqualifying conflicts." Id. at 376.

In Mountain Hill, L.L.C. v. Township Committee of Township of Middletown, we noted the LGEL was "clearly applicable" to our conflicts of interest analysis, 403 N.J. Super. 146, 201 (App. Div. 2008), and; in Central 25, LLC v. Zoning Board of City of Union City, we noted the LGEL was a "source[] of authority to determine whether . . . a disqualifying conflict of interest . . . require[d] . . . recusal." 460 N.J. Super. 446, 461 (App. Div. 2019).

This well-established case law not only reinforces the courts' historic role in considering allegations of governmental conflicts of interest but recognizes the standards codified in the LGEL as a tool to effectuate our role.

Third, there is no express language in the LGEL that grants the LFB exclusive jurisdiction over LGEL allegations. See Smerling, 389 N.J. Super. at 187.

Fourth, the penalties imposed by the LFB are not the only remedies for a violation of the LGEL. Ibid. Indeed, the LGEL states "[t]he remedies provided

13

herein are in addition to all other criminal and civil remedies provided under the law." N.J.S.A. 40A:9-22.10(c).

For all the above reasons, we conclude the trial court had subject matter jurisdiction to consider plaintiffs' allegation that defendants violated the LGEL. Thus, we affirm the April and May orders, vacating that part of the May order regarding the trial court's reference to the removal of the LGEL finding and referral to the LFB.

Affirmed in part and vacated in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                                A-3060-23