**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4565-17T1

FUTURE CARE CONSULTANTS,
LLC,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

M.D.,

      Defendant-Respondent/
      Cross-Appellant.

_____

Submitted May 16, 2019 – Decided July 5, 2019

Before Judges Simonelli and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1212-16.

SB2 Inc., attorneys for appellant/cross-respondent (Laurie M. Higgins, on the brief).

Rutgers Law Associates, attorneys for respondent/ cross-appellant (Gregory T. Gorman, on the brief).

PER CURIAM

Plaintiff/Appellant Future Care Consultants and defendant/cross-appellant M.D. appeal from orders entered on April 26, 2018, and May 9, 2018, dismissing the complaint and counterclaim with prejudice. We affirm for the following reasons.

I.

Defendant cared for her mother, B.S., and financially supported her from October 2010 until B.S. was admitted to Liberty Royal Rehabilitation and Healthcare Center (Liberty) in October 2013. Plaintiff serves as the fiscal agent for Liberty. Prior to becoming B.S.'s power-of-attorney (POA) in May of 2013, defendant transferred funds from a joint account B.S. owned with her husband, J.S., into an account he could not access. Defendant claims she did this because J.S. was exhibiting signs of dementia, and he was spending marital funds in a reckless manner. Defendant claims she used the transferred money to pay for B.S.'s personal needs and shelter expenses for B.S.'s condominium in Monmouth County. After living on and off with defendant in Pennsylvania, B.S. returned to her condominium in March 2013 and required the assistance of two caretakers, who were hired by defendant. In October 2013, B.S. suffered serious injuries after a fall, which resulted in a hospitalization followed by an admission to Liberty.

2

In her capacity as POA only and not as a personal guarantor, defendant signed documents as requested by Liberty on behalf of B.S., including a direct debit authorization agreement and a Social Security Administration Notification. Defendant contends Liberty was aware that B.S. had not been approved for Medicaid at the time, and that a Medicaid application had to be processed. Defendant also provided Liberty with a $930 check for fees not covered by B.S.'s social security benefits even though B.S.'s benefits had already been assigned to Liberty. According to defendant, she never signed any documents designating her as a personal guarantor or a responsible party in respect of B.S.'s expenses at Liberty.

On November 27, 2014, B.S. was approved for Medicaid, but the Monmouth County Division of Social Services imposed a 224-day period of ineligibility for transferring $58,618.11 to defendant. On behalf of Liberty, plaintiff sought reimbursement of the $58,618.11 balance due from defendant based upon theories of conversion and breach of fiduciary duties. The complaint alleged that defendant withdrew $37,085.47 from B.S.'s TD Bank account in July 2010, and $29,955.79 from B.S.'s Santander Bank account in August 2010. Plaintiff also alleged that on June 3, 2013, B.S. wrote a check for $1,067.28 from her Wells Fargo bank account to the Derby Township Tax Collector to pay

3

defendant's real estate taxes. In total, plaintiff alleged that defendant received $68,108.54 from B.S. and defendant could only prove $9,490.43 was spent on her mother's care, thereby making the net amount of plaintiff's claim equal $58,718.11. Defendant filed a counterclaim asserting she is not a guarantor of B.S.'s debts, and seeking compensatory and punitive damages for violations of the Nursing Home Responsibilities and Rights of Residents Act (NHA), N.J.S.A. 30:13-1 to -17.

On April 25, 2018, defendant filed a motion in limine seeking to dismiss plaintiff's complaint for lack of standing, which was granted on April 27, 2018. The judge found there was no evidence of a contract between the parties "that would designate . . . [d]efendant as a 'responsible party' to provide payment to [p]laintiff from [B.S.'s] funds without incurring personal liability." The judge further found that if such a contract or agreement existed, plaintiff's only recourse would have been against defendant in her capacity as POA, because the statute "explicitly prohibits a nursing facility from requiring a third party guarantee of payment to the facility."

On April 30, 2018, plaintiff filed a motion for summary judgment seeking to dismiss defendant's counterclaim insofar as it sought an award of "actual and punitive damages." Plaintiff alleged that "[d]efendant failed to return the

transferred funds, and she failed to contribute any funds to the cost of [B.S.'s] skilled nursing care at [Liberty]." On May 4, 2018, plaintiff's motion to dismiss was denied because the judge found "the language of plaintiff's complaint raised a question as to whether plaintiff sought to have the [c]ourt declare [defendant] personally responsible for [B.S.'s] outstanding balance." The judge determined defendant met her burden under Rule 4:46-2 to support her counterclaim by submitting sufficient evidence that plaintiff violated the NHA. The judge also found that plaintiff failed to bring claims against defendant in her capacity as B.S.'s POA, and failed to establish "evidence of a contract or agreement that would allow . . . plaintiff to proceed against her as a fiduciary."

After conducting a supplemental review of the motion papers and hearing oral argument on May 4 and May 8, 2018, the judge sua sponte reconsidered plaintiff's summary judgment motion and determined that he had "erroneously taken a broad approach" to the interpretation of N.J.S.A. 30:13-3.1(a)(2). The judge stated:

> It is undisputed that [p]laintiff and [d]efendant did not execute any form of contract or agreement that would satisfy the exception in N.J.S.A. 30:13-3.1(a)(2). Thus, it follows that no third party guarantee of payment was required. The language in N.J.S.A. 30:13-3.1(a)(2) explicitly prohibits third party guarantees, but does not offer any guidance as to what a third party guarantee of payment entails.

5

Because there was no written agreement between the parties designating defendant as a "responsible party" on behalf of B.S., there was no statutory violation, thereby warranting dismissal of defendant's counterclaim with prejudice because the judge found there was "no genuine issue of material fact requiring submission to a jury."

On appeal, plaintiff argues the judge erred in dismissing its complaint based upon a lack of standing. In her cross-appeal, defendant argues the judge correctly dismissed the complaint but erred in summarily dismissing her counterclaim.

II.

Plaintiff's Appeal

Plaintiff argues the judge improperly dismissed its complaint for lack of standing. We apply the same standard for summary judgment as the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the

A-4565-17T1

moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

First, the reviewing court must decide whether there was a genuine issue of fact. Rule 4:46-2(c) states that there is only a genuine issue of fact "if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Pursuant to this standard, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Plaintiff's argument rests solely on the standard set forth in New Jersey Citizen Action v. Riviera Motel Corporation, 296 N.J. Super. 402, 415 (App. Div. 1997), where we held: "New Jersey courts take a broad and liberal approach to standing." To confer standing, a "plaintiff must have a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and there must be a substantial likelihood that the plaintiff will suffer harm in the event of an unfavorable decision." Id. at 409-10. Plaintiff contends that it has a stake in the claim here because it is attempting to recover B.S.'s funds "to

reduce or eliminate the outstanding balance the facility [(Liberty)] is owed for the skilled nursing care rendered to B.S." Because plaintiff is "seeking money directly from [defendant] for recovery of B.S.'s funds as payment of the services rendered to" B.S., plaintiff argues the parties are, in reality, true adversaries. Plaintiff also claims there is a substantial likelihood it would suffer harm if recovery of B.S.'s funds from defendant is barred. Since the bank records indicate that defendant spent the transferred funds on items unrelated to B.S., plaintiff asserts its only recourse is to seek these funds directly from defendant.

New Jersey Citizen Action concerned issues of standing emanating from a violation of the Americans with Disabilities Act (ADA). Id. at 407-08. There, plaintiff alleged that defendant failed to construct proper accommodations for disabled and handicapped persons. Id. at 407. In reaching our decision, we looked to the legislative history of the ADA, which "clearly indicates that associations may bring ADA claims on behalf of disabled individuals." Id. at 413. Notably, there were no claims of conversion or breach of fiduciary duty asserted in New Jersey Citizen Action, as in this case.

Standing is governed by Rule 4:26-1, which provides: "Every action may be prosecuted in the name of a real party in interest[.]" The threshold to prove standing is "fairly low." EnviroFinance Grp., LLC v. Envtl. Barrier Co., 440

8

N.J. Super. 325, 340 (App. Div. 2015) (quoting Reaves v. Egg Harbor Twp., 277 N.J. Super. 360, 366 (Ch. Div. 1994)). While "[a] financial interest in the outcome ordinarily is sufficient to confer standing[,]" it is not automatic. Ibid. (quoting Strulowitz v. Provident Life & Cas. Ins. Co., 357 N.J. Super. 454, 459 (App. Div. 2003)). Moreover, a litigant usually does not have standing "to assert the rights of a third party." Ibid. (quoting Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 436 (App. Div. 2011)).

Plaintiff claims that defendant's purported conversion of her B.S's funds proximately caused B.S.'s Medicaid ineligibility for 224 days. In order to assert a claim for conversion, "[i]t is essential that the money converted by a tortfeasor must have belonged to the injured party." Advanced Enters. Recycling, Inc. v. Bercaw, 376 N.J. Super. 153, 161 (App. Div. 2005) (quoting Commercial Ins. Co. of Newark v. Apgar, 111 N.J. Super. 108, 115 (Law Div. 1970)). Conversion is the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other in full value of the chattel." Chicago Title Ins. Co. v. Ellis, 409 N.J. Super. 444, 454 (App. Div. 2009) (quoting Restatement (Second) of Torts § 222A(1) (Am. Law. Inst. 1965)). A defendant does not need to intentionally act wrongfully, but must have "intended 'to

exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" LaPlace v. Briere, 404 N.J. Super. 585, 595 (App. Div. 2009) (quoting Prosser and Keeton on Torts §15 at 92 (5th ed. 1984)).

Although conversion has historically been applied to tangible chattels, we have held that the tort may also apply to the exercise of dominion or control over money in certain circumstances. Chicago Title, 409 N.J. Super. at 449, 454-55. "It is essential that the money have belonged to the injured party and that it be identifiable, but the money need not be the identical bills or coins that belong to the owner." Id. at 455-56. A conversion claim does not lie for collection of a mere debt. Bondi, 423 N.J. Super. at 431. For example, we held that no claim for conversion could be brought where a benefits administrator withdrew funds from volunteer firefighters' accounts and returned them to the municipality from which they came, in accordance with its contract. N. Haledon Fire Co. No. 1 v. Borough of N. Haledon, 425 N.J. Super. 615, 631 (App. Div. 2012). We determined that the administrator did not exercise dominion and control over the funds; rather, the municipality did. Ibid.

Here, neither plaintiff nor Liberty ever had ownership or possession of the $58,618.11 amount in dispute. Defendant argued that she used B.S.'s funds to pay for B.S.'s care prior to her residency at Liberty. The record reflects that

defendant was not afforded an opportunity to provide discovery because she was not notified of the Medicaid hearing. Further, there is no evidence whatsoever that defendant agreed, in writing, to be personally liable for B.S.'s expenses at Liberty. As the judge aptly found:

> [B]y virtue of finding that there was no signed admissions agreement and thus no third party guarantee, there can be no implication of [N.J.S.A.] 30:13-3.1(a)(2). It is clear to this [c]ourt that in this situation that[,] for that guarantee to take place there must have been a signed contract. There is no contract in this case, therefore there is no third party guarantee.

Plaintiff, therefore, had no standing to assert a claim for conversion against defendant, and we find no error in the judge's ruling.

Next, plaintiff claims defendant owed Liberty a fiduciary duty, as the intended third party beneficiary of B.S.'s Medicaid benefits. In analyzing this type of claim, a court must ascertain whether the parties "intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement[,]" when determining whether a third party beneficiary relationship exists. Ross v. Lowitz, 222 N.J. 494, 513 (2015) (quoting Broadway Maint. Corp. v. Rutgers, 90 N.J. 253, 259 (1982)). The judge correctly found there was no written contract between the parties that imposes any liability on defendant or creates such a duty. Defendant

did not become B.S.'s POA until May 2013, almost three years after the funds were transferred. Furthermore, the NHA prevents healthcare facilities from requiring a resident's family member to personally guarantee the resident's bills.

In pertinent part, the NHA states:

> a. A nursing home shall not, with respect to an applicant for admission or a resident of the facility:
>
> . . . .
>
> (2) require a third party guarantee of payment to the facility as a condition of admission or expedited admission to, or continued residence in, that facility; except that when an individual has legal access to a resident's income or resources available to pay for facility care pursuant to a durable power of attorney, order of guardianship or other valid document, the facility may require the individual to sign a contract to provide payment to the facility from the resident's income or resources without incurring personal financial liability.
>
> [N.J.S.A. 30:13-3.1(a)(2).]

In granting defendant's motion in limine based on this statute, the judge articulated "[i]t is undisputed that [p]laintiff and [d]efendant did not execute any form of contract or agreement that would satisfy the exception in N.J.S.A. 30:13-3.1(a)(2)." Our "Court has emphasized repeatedly that '[i]n the interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent.'" Young v. Schering Corp., 141 N.J. 16, 25 (1995) (alteration in original)

12

(quoting Roig v. Kelsey, 135 N.J. 500, 515 (1994)).  We are not bound by "[a] trial court's interpretation of the law and the legal consequences that flow from established facts[,]" however.  Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The judge relied on Manahawkin Convalescent v. O'Neill, where the nursing home attempted to collect an unpaid balance from a resident's daughter, the defendant, after the resident's death.  217 N.J. 99, 105 (2014).  Our Supreme Court was tasked with determining whether the parties' contract violated the NHA.  Ibid.  Upon admitting her mother to the nursing home, defendant signed plaintiff's "Rehabilitation and Nursing Home Admission Agreement," which designated her "as the 'Responsible Party' for purposes of processing her mother's bills, and set forth remedies in case of a default of that obligation."  Id. at 105-06.

Defendant's duties as a "Responsible Party" under the agreement required her to provide "personal clothing and effects, spending money and uninsured hospital costs, physician fees and medication costs."  Id. at 107.  The agreement defined "Responsible Party" as "the person acting on behalf of the [r]esident as his or her representative and guardian in fact, or one who has been appointed by the [c]ourt as legal guardian."  Ibid.  The agreement also indicated that real

13

properties could be subject to a lien if there were unpaid bills, but the agreement neither distinguished between the resident and the "Responsible Party," nor did it specify whose properties could be subject to a lien. Id. at 108.

The Manahawkin Court held that the agreement

> contravened neither 42 [U.S.C.] § 1396r(c)(5)(A)(ii)[1] nor its state law analogue in the NHA, N.J.S.A. 30:13-3.1. Nowhere in the definition of "Responsible Party," or the Admission Agreement's provision addressing the Responsible Party's role in the payment of resident's obligations, is there any suggestion that the Responsible Party commits his or her personal assets to pay for the resident's care.
>
> [Id. at 118-19.]

The Supreme Court concluded that the agreement did not violate any federal or state laws because it did not require defendant to use her personal funds to pay for her mother's bills; rather, it required her to use her mother's assets. Id. at 119.

In Manahawkin, our Supreme Court explained that the NHA was enacted to complement the federal Nursing Home Reform Act, 42 U.S.C. § 1396r, which was "intended to protect nursing home residents and their families." Id. at 116. The federal act "provides that 'a nursing facility must . . . not require a third

---

[1] 42 U.S.C. §1396r is the federal statute which outlines requirements for nursing facilities.

party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility.'" Ibid. (quoting U.S.C. § 1396r(c)(5)(A)(ii)). The federal statute specifies which assets are beyond the facility's reach, and does not bar facilities "from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care." Ibid. (quoting U.S.C. § 1396r(c)(5)(B)(ii)).

Our statute, which came into effect in 1976, did not initially address payment of a resident's bills. Id. at 116-17. The Legislature found "that the well-being of nursing home residents in the State of New Jersey requires a delineation of the responsibilities of nursing homes and a declaration of a bill of rights for such residents." N.J.S.A. 30:13-1. The Legislature amended the statute in 1997 to include similar language as the federal statute, preventing nursing and rehabilitation homes from requiring an individual to personally guarantee a resident's bills. Manahawkin, 217 N.J. at 117; see N.J.S.A. 30:13-3.1(a)(2). The Legislature also included "enforcement and remedial provisions in the NHA[,]" including authorization for the Commissioner of Health to promulgate regulations pursuant to the statute. Ibid.; see N.J.S.A. 30:13-10.

15

Here, the judge distinguished the holding in <u>Manahawkin</u> because in this case, there was no contract between the parties designating defendant as a responsible party, "and thus no third party guarantee, [and] there can be no implication of N.J.S.A. 30:13-3.1(a)(2)." We agree with the judge's conclusion here. There is nothing in the record to suggest defendant assumed personal liability for B.S.'s expenses at Liberty and the complaint was properly dismissed.

III.

<u>Defendant's Cross-Appeal</u>

Defendant argues the judge erred in dismissing her counterclaim because he improperly applied the summary judgment standard and found that defendant was not responsible for B.S.'s outstanding balance. Defendant argues that N.J.S.A. 30:13-4.1, -4.2, and -8, allow her to pursue claims for punitive damages, treble damages, and attorney's fees. N.J.S.A. 30:13-4.1 provides:

> Whenever a nursing home requires a security deposit advanced prior to the admission of a person to the nursing home, the money . . . shall continue to be the property of the resident and shall be held in trust by the nursing home and shall not be mingled with the personal property or become an asset of the nursing home.

N.J.S.A. 30:13-4.2 states "[a] person shall have a cause of action against the nursing home for any violation of <u>this act</u>. . . . A plaintiff [(counterclaimant

16

here)] who prevails in an action shall be entitled to recover reasonable attorney's fees and costs of the action." (Emphasis added). These two provisions were added in the 1991 amendment of the statute. L. 1991, c. 262, § 2. Further, N.J.S.A. 30:13-8 provides that "[a]ny person or resident whose rights as defined herein are violated shall have a cause of action against any person committing such violation." "[T]reble damages may be awarded to a resident or alleged third party guarantor of payment who prevails in any action to enforce provisions of [N.J.S.A. 30:13-3.1]." Ibid.

In support of her argument, defendant relies on Ptaszynski v. Atlantic Health Systems, Inc., 440 N.J. Super. 24 (App. Div. 2015) to support an action against plaintiff under N.J.S.A. 30:13-4.2. There, plaintiff filed suit, claiming defendant violated N.J.S.A. 30:13-3(h), "which requires nursing homes to comply with all applicable state and federal statutes, rules and regulations." Id. at 30. Ptaszynski alleged the nursing home was negligent, causing her mother's death, and asserted a claim under N.J.S.A. 30:13-4.2 and -8. Id. at 29-30. We analyzed the provisions of N.J.S.A. 30:13-4.2, and determined it did not provide relief under N.J.S.A. 30:13-3(h). Id. at 36. Plaintiff here argues that the Ptaszynski holding is irrelevant, making defendant's reliance upon it misplaced.

In interpreting a statute, our "paramount goal" is to "ascertain the Legislature's intent." Id. at 34 (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). Generally, the best indication of a statute's intent is its language, which must be afforded "[its] ordinary meaning and significance[.]" DiProspero, 183 N.J. at 492. Our analysis, therefore, "begins with the plain language of the statute." Id. at 493. The words of a statute must be read "in context with related provisions so as to give sense to the legislation as a whole[.]" Id. at 492. Statutory language that "is clear and unambiguous, and susceptible to only one interpretation" should not be disturbed. Ibid.

In Ptaszynski, we concluded that "[t]he plain language of N.J.S.A. 30:13-4.2 and the context in which the phrase 'this act' is used in N.J.S.A. 30:13-4.1 and N.J.S.A. 30:13-4.2 indicate the Legislature intended the phrase to mean the amendatory legislation enacted in 1991, not the whole of the NHA." 440 N.J. Super. at 35. Using N.J.S.A. 30:13-4.1(g) as an example, which confers authority upon the Commissioner of Banking to adopt rules and regulations in relation to an interest "pursuant to the provisions of this act[,]" we held that this language only applied to N.J.S.A. 30:13-4.1, and not to other provisions of the NHA. Ibid. We noted the amendatory legislation, which states, "this act came into effect on the first day of the sixth month after its enactment, and recognized

that "'this act' as used in this section of the legislation obviously refers to the statutory amendments, not the NHA as a whole." Ibid. This led us to conclude "[t]here is no indication that, in enacting the amendments to the NHA, the Legislature intended to confer upon nursing home residents the ability to bring actions to enforce any violation of the NHA." Ibid.

In referring to the Statement of the Senate Senior Citizen and Veterans Affairs Committee to the Senate, No. 1560, which was later enacted as L. 1991, c. 262., we noted it provides that "a person shall have a cause of action against a nursing home for any violations of the provisions of the bill, and the Statement of the Assembly Senior Citizens Committee to Senate, No. 1560 also included an identical statement. Id. at 35-36. These legislative pronouncements led us to hold "that the amendatory legislation was intended to allow individuals to assert a cause of action for a violation of the provision of the 'bill' relating to security deposits, not for a violation of any other provision of the NHA." Id. at 36.

Adhering to this sound reasoning, defendant's claims against plaintiff, rooted in N.J.S.A. 30:13-4.1, -4.2, and -8, must fail. The statutory amendments do not provide relief for the entire act and they only apply to individuals seeking recovery for security deposits.

Defendant also asserts that although plaintiff argued it never requested that she personally pay her mother's bills, its complaint specifically pleads the opposite. The complaint alleges that "[d]efendant spent only approximately [$9000] of the $68,000 she received from [B.S.] on [B.S.'s] behalf. At all times herein mentioned, [B.S.] was, and still is, the owner of the converted funds. [B.S.] was, and still is, entitled to the possession of these funds." The complaint sought to compel defendant to

> immediate[ly] return all converted resources to [B.S.] within ten . . . days so that the funds may be utilized to pay for the outstanding balance owed to [Liberty], and in the event that [d]efendant fails to completely return all of the converted funds, that this [c]ourt enter a [j]udgment against [d]efendant for the amount of the converted funds.

Plaintiff's complaint further alleged defendant took her mother's funds, improperly spent her money, and plaintiff demanded that these monies be transferred to Liberty in satisfaction of B.S.'s bills. Plaintiff skirts the issue by claiming defendant misused her mother's funds, and therefore, plaintiff is requesting that B.S.'s money, and not defendant's personal funds, be utilized in order to satisfy Liberty's debt. But defendant is not obligated to pay B.S.'s balance out of defendant's own funds and plaintiff's argument is therefore devoid of any merit. Further, as the judge noted, there was no agreement between the

parties, and consequently no invocation of an NHA violation. The grant of summary judgment dismissing defendant's counterclaim was therefore appropriate.

We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4565-17T1