**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0380-22

IN THE MATTER OF
REGISTRANT J.R.[1]

_____

> **APPROVED FOR PUBLICATION**
>
> **January 31, 2024**
>
> **APPELLATE DIVISION**

Argued December 5, 2023 – Decided January 31, 2024

Before Judges Haas, Gooden Brown and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. ML-0222.

James H. Maynard argued the cause for appellant J.R. (Maynard Law Office, LLC, attorney; James H. Maynard, on the briefs).

Randolph E. Mershon, III, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Yolanda Ciccone, Middlesex County Prosecutor, attorney; David Michael Liston, Assistant Prosecutor, of counsel; Brian Dennis Gillet and Randolph E. Mershon, III, of counsel and on the briefs).

The opinion of the court was delivered by

PUGLISI, J.S.C. (temporarily assigned).

---

[1]    Although this case was entitled State of New Jersey v. J.R., we have amended the caption on appeal to reflect the protocol for registration matters.

In this appeal, as an issue of first impression, we are asked to consider whether a New Jersey court may consider a motion to terminate the registration requirements of an individual subject to Megan's Law[2] in New Jersey but residing in another state. We hold that although a New Jersey court may have jurisdiction to decide the motion, it must decide on a case-by-case basis whether the registrant has standing to bring the motion. Because the Megan's Law judge correctly determined J.R. lacked standing to have his motion decided in New Jersey, we affirm.

In 1993, J.R. pleaded guilty to endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and was sentenced to five years' probation. Because he was on probation on October 31, 1994, the effective date of Megan's Law, J.R. was required to register commencing at that time. N.J.S.A. 2C:7-2(c)(1). In 2002, he pleaded guilty to failure to register, N.J.S.A. 2C:7-2(a)(3), and was sentenced to three years' probation. Although the exact date is unclear from the record before us, J.R. moved to Montana sometime in 2021.

Megan's Law is intended "to protect the community from the dangers of recidivism by sexual offenders." In re Registrant C.A., 146 N.J. 71, 80 (1996) (citing N.J.S.A. 2C:7-1(a)). The statute requires offenders who have been convicted, adjudicated delinquent, or found not guilty by reason of insanity of

---

[2] N.J.S.A. 2C:7-1 to -23.

certain sex offenses, including an out-of-state offense that is similar to an enumerated offense, to register with the appropriate law enforcement agency in New Jersey.  N.J.S.A. 2C:7-2 to -4.  It also requires non-resident offenders who are required to register in their home state to register in New Jersey if they are enrolled in an educational institution in New Jersey or engaged in employment or a vocation for a requisite period of time in New Jersey.  N.J.S.A. 2C:7-2(a)(2).

Megan's Law contains a termination provision, which permits "a person required to register" to

> make application to the Superior Court of this State to terminate the obligation upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others.
>
> [N.J.S.A. 2C:7-2(f).]

Montana's version of our Megan's Law is the Sexual or Violent Offender Registration Act (SVORA), Mont. Code Ann. § 46-23-501 to -520.  Under that statute, a sexual offender is defined as "a person who has been convicted of or, in youth court, found to have committed or been adjudicated for a sexual . . . offense" enumerated in the statute.  Id. at -502(11).  A sexual offender includes an individual who has been convicted of "any violation of a law of another

3

state, . . . that is reasonably equivalent to a violation listed" as a sexual offense "or for which the offender was required to register as a sexual offender after an adjudication or conviction."  Id. at -502(10)(a)(xvii).

SVORA also contains a provision permitting a registrant to petition the court for relief from the registration requirement.  After ten years for a low-risk offender or twenty-five years for a high-risk offender, the "offender may petition the sentencing court or the district court for the judicial district in which the offender resides for an order relieving the offender of the duty to register."  Id. at -506(3).  A court may grant the petition if it finds "(a) the offender has maintained a clean record during their period of registration; and (b) continued registration is not necessary for public protection and that relief from registration is in the best interests of society."  Ibid.

J.R. filed a motion to terminate his registration requirements in the Superior Court of New Jersey, Middlesex County.  Although he is statutorily barred from relief under N.J.S.A. 2C:7-2(f) because he has a subsequent conviction for failure to register, he sought to challenge the constitutionality of that provision.[3]  Setting aside the merits of his request for relief, J.R. argued that the New Jersey court was the only court with jurisdiction to decide his

---

[3]  We have since upheld the constitutionality of the "lifelong registration and community notification requirements on registrants who fail to satisfy subsection (f)."  In re M.H., 475 N.J. Super. 580, 595 (App. Div. 2023).

motion because Megan's Law provides that a registrant "may make application to the Superior Court of this State to terminate the obligation." N.J.S.A. 2C:7-2(f).

In the Law Division and on appeal, J.R. and the State focused their arguments on the court's jurisdiction to hear the matter; however, we agree with the Megan's Law judge that the determinative issue was not one of jurisdiction, but of standing.

"Whether a party has standing to pursue a claim is a question of law subject to de novo review." Cherokee LCP Land, LLC v. City of Linden Planning Bd., 234 N.J. 403, 414 (2018) (citations omitted). "We therefore accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Id. at 414-15 (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Jurisdiction and standing are two separate threshold determinations pertaining to whether the court may hear a case. N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 410-11 (App. Div. 1997). Subject-matter jurisdiction involves "a threshold determination as to whether the [c]ourt is legally authorized to decide the question presented." Id. at 411.

> Subject-matter jurisdiction refers to "the power of a
> court to hear and determine cases of the class to which

the proceeding in question belongs. It solely rests upon the court's having been granted such power by the Constitution or by valid legislation, and cannot be vested by agreement of the parties."

[Ibid. (italicization omitted) (quoting State v. Osborn, 32 N.J. 117, 122 (1960)).]

There is no question the New Jersey Superior Court has jurisdiction to hear a motion to terminate a registration requirement, as its authority is plain in the statute.

Standing, ripeness and mootness, however, are justiciability doctrines, Jackson v. Dep't of Corr., 335 N.J. Super. 227, 231 (App. Div. 2000), and they "refer[] to whether a matter is appropriate for judicial review." N.J. Citizen Action, 296 N.J. Super. at 411. "In order to possess standing, the plaintiff must have a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and there must be a substantial likelihood that the plaintiff will suffer harm in the event of an unfavorable decision." Id. at 409-10.

Other justiciability doctrines include mootness and ripeness. The doctrine of mootness requires "that judicial power is to be exercised only when a party is immediately threatened with harm." Stop & Shop Supermarket Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 291 (App. Div. 2017) (quoting Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010)). But

"controversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed." Ibid. (quoting N.J. Div. of Youth & Family Servs. v. W.F., 434 N.J. Super. 288, 297 (App. Div. 2014)).

Ripeness seeks "to avoid premature adjudication of abstract disagreements." Garden State Equal. v. Dow, 434 N.J. Super. 163, 188 (Law Div. 2013) (citing Abbott Labs v. Gardner, 387 U.S. 136, 148-49 (1967)). A "claim is not ripe for adjudication if the facts illustrate that the rights or status of the parties are 'future, contingent, and uncertain.'" Id. at 189 (quoting Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J. Super. 295, 302 (App. Div. 2005)). A claim is only ripe "if 'there is a real and immediate' threat" to the plaintiff. Ibid. (quoting K. Hovnanian Cos. of N. Cent. Jersey v. N.J. Dep't of Env't Prot., 379 N.J. Super. 1, 10 (2005)).

In determining whether J.R. had standing, the judge examined both Megan's Law and SVORA. He found J.R.'s conviction for endangering the welfare of a child was not a "reasonable equivalent" to any of the sexual offenses enumerated in SVORA at that time.[4] Thus, J.R. was required to

---

[4] SVORA has since been amended to include endangering the welfare of a child as a registrable offense. See Mont. Code Ann. 46-23-502(10)(a)(x) (effective October 1, 2023). Although J.R. would now presumably be required to register in Montana because endangering the welfare of a child under N.J.S.A. 2C:24-4(a) is a "reasonable equivalent" to Mont. Code Ann. 45-5-

register in Montana because he was convicted of an offense for which he was required to register in New Jersey. Mont. Code Ann. § 46-23-502(10)(a)(xvii).

The judge also correctly determined J.R. had no New Jersey registration requirement while he lived in Montana. He was not enrolled in school or work here, nor did he intend to be. Therefore, he was not "a person required to register" under N.J.S.A. 2C:7-2(f).

As the judge found, J.R. had no stake in the outcome of the matter because his registration obligation in Montana was dependent on his prior conviction of an offense requiring registration, which would remain so regardless of the outcome of his motion. He could not show that he would suffer harm in the court's denying the motion, as it did not impact his Montana registration obligation; conversely, he could not show he would benefit in the court's granting the motion, as again, a favorable decision would not terminate his registration obligation in Montana. Because J.R. was not facing or suffering harm that a New Jersey court could address, he lacked standing to have a New Jersey court decide his motion. For these reasons, J.R.'s motion was also moot and not ripe for adjudication and was correctly dismissed for failing to present a justiciable controversy.

_____

622(2)(b)(ii), this additional ground for J.R.'s registration requirement in Montana does not alter our analysis of standing.

J.R. relies heavily on his assertion that, regardless of his residency in another state, he nevertheless continues to have Megan's Law "status" in New Jersey. We reject this argument because there is no legal "status" as a Megan's Law offender—either there is a requirement to register in New Jersey or not. The word "status" appears nowhere in the statute and to the extent the term has appeared in published decisions, it refers to an offender's statutory requirement to register in New Jersey, which is not present here. Cf. In re C.K., 233 N.J. 44, 54 (2018) (Registrant "expressed his feelings of isolation, anxiety, and depression resulting from his Megan's Law status, . . . and his fear that his registrant status will interfere with his ability to one day be a normal parent."); In re L.E., 366 N.J. Super. 61, 63 (App. Div. 2003) ("Registrants argue that . . . they are entitled to have their Megan's Law status terminated because they were under the age of fourteen when their sex offenses were committed and are now over eighteen."); In re Commitment of T.J., 401 N.J. Super. 111, 116 (App. Div. 2008) ("The judge commented on T.J.'s Megan's Law status."); State ex rel. D.A., 385 N.J. Super. 411, 418 (App. Div. 2006) (Registrant's "tier classification determines to whom notice will be given of the juvenile's Megan's Law status."). Thus, we reject J.R.'s assertion that this impalpable "status" gives him standing.

J.R. also claims he suffers negative effects from his New Jersey "status" because he is subject to the federal Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. § 20911 to §20932, and International Megan's Law, 34 U.S.C. § 21501 to § 21510.  We find this argument unavailing because it is not based on a defensible reading of the statutes.

"Title I of the Adam Walsh Act—known as [SORNA]—establishes a national baseline for sex offender registration and requires that states receiving federal crime funds substantially comply with the guidelines it outlines." C.K., 233 N.J. at 61 (citing 34 U.S.C. § 20927, § 10151).  "In effect, SORNA serves as model legislation that can be adopted in part or in whole by the states." Ibid.

"SORNA classifies sex offenders into three risk tiers—Tiers I, II, and III—for registration and notification purposes, depending solely on the nature of the offense."  Id. at 62 (citing 34 U.S.C. § 20911).  "The offender's tier assignment, in turn, determines the duration of his registration requirements." Ibid. (citing 34 U.S.C. § 20915(a)).

Advanced Notification of Traveling Sex Offenders, also known as International Megan's Law, requires certain sex offenders to report intended international travel.  See 34 U.S.C. § 21501 to § 21510, 18 U.S.C. § 2250.  It defines a "covered sex offender" as "an individual who is a sex offender by

10

reason of having been convicted of a sex offense against a minor," 34 U.S.C. § 21502(3); and also includes a "sex offender under SORNA," 34 U.S.C. § 21502(9).

Thus, any federal registration or reporting requirements arise from J.R.'s conviction, not an intangible "status" in New Jersey, and he has not otherwise identified any case or statute in support of his contention. Because a New Jersey court's decision on his motion to terminate would not impact any federal obligation under SORNA or International Megan's Law, these requirements also do not give rise to standing.

We note the current Megan's Law Bench Manual § 904, dated August 2020, contains the following statement: "At the Megan's Law meeting at Judicial College on November 24, 2015, the Megan's Law [j]udges agreed that registrants residing in another state should file for termination of the registration obligation in the state where they are domiciled." This view oversimplifies the issue of standing. We recognize that

> [s]ex offender registration and notification laws are widely used. The statutes, regulations, and laws addressing sex offender registration and notification in all fifty states, the District of Columbia, the five principal United States territories, and over 125 federally recognized Indian Tribes are varied and complex. Each local system makes its own determinations about who is required to register, which crimes are registerable offenses, what

11

> information offenders must provide, and what consequences are inherent in the scheme.
>
> [In re B.B., 461 N.J. Super. 303, 308-09 (App. Div. 2019).]

In deciding whether an out-of-state registrant has standing to bring a motion to terminate in New Jersey, the Megan's Law judge must necessarily consider the statutory scheme of the jurisdiction where the registrant resides. This ensures a registrant has a forum to bring a motion consistent with the determinations of both jurisdictions regarding what is in the best interests of protecting its people.

While some jurisdictions have enacted registration schemes similar to New Jersey and Montana, where an application to terminate must be decided by the court where a registrant resides, other jurisdictions determine the duration of registration based on the obligation in the state of conviction. For example, some states may require a resident with an out-of-state conviction to register for as long as the registration obligation in the state of conviction, or the longer of the two states' registration obligations, or until the state of conviction terminates the obligation.[5] In those instances, subject to the

---

[5] Cf. Connecticut (Conn. Gen. Stat. § 54-253(a)), Kansas (Kan. Stat. Ann. § 22-4906(k)), Minnesota (Minn. Stat. § 243.166, subd. 1b(b)), New Mexico (N.M. Stat. Ann. 29-11A-4(L)(3)), Pennsylvania (42 Pa. Cons. Stat. § 9799.15(a)(7)), and Utah (Utah Code Ann. § 77-41-105(3)(b)).

A-0380-22

Megan's Law judge's individual determination, we presume a registrant would have standing to bring a motion to terminate in New Jersey. In those scenarios the registrant has a stake in the outcome of the motion because it would affect the obligation to register in the state where the registrant resides.

To the extent we have not expressly addressed any issues raised by J.R., it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION